L. W. FITZPATRICK, RESPONDENT, v. SERVICE CONSTRUCTION COMPANY, A CORPORATION, APPELLANT.—56 S. W. (2d) 822.

St. Louis Court of Appeals. Opinion filed February 7, 1933.

*Lawrence E. Tedrick* for appellant.

1076

*E. W. Allison* for respondent.

McCULLEN, J.—This is an action to recover from defendant $660 for damages to plaintiff's automobile, clothing and eyeglasses, alleged to have been caused by defendant's negligence in permitting a roadway pavement finisher belonging to defendant to stand upon a public highway in the nighttime without any lights or signal lamps attached thereto, and without any barricades for warning or protection to the public.

A trial before the court and a jury resulted in a verdict and judgment for plaintiff in the sum of $650. Defendant has appealed.

The theory upon which plaintiff brought and submitted this case is shown by the following language in the petition:

"That at all said times it became and was the duty of persons in charge of any vehicle, while on said highway, whether in operation or at rest, during the period from one-half hour after sunset to one-half hour before sunrise to carry thereon and have attached to such vehicle, so being upon said highway, a lighted signal lamp or lamps so constructed, mounted and adjusted as to be plainly visible from a distance of at least five hundred (500) feet in the direction projected."

It is clear that the portion of the petition above set forth is based upon Section 7778, Revised Statutes 1929 (7 Mo. St. Anno., sec. 7778, p. 5522). It erroneously assumes, however, that said Section applies to "any vehicles," whereas, it applies only to a "motor vehicle." The petition then charges that on the 20th day of June, 1930, and during the period one-half hour after sunset to one-half hour before sunrise:

"Defendant herein, being the owner and having under its control and in its care and custody a certain vehicle; to-wit: A roadway pavement finisher of the weight of about five tons, stationed and left said roadway pavement finisher standing, being and parked upon the concrete pavement slab of said Highway No. 61, at a point at or near the city limits of the City of Farmington, in said county and State, and the said roadway pavement finisher, as aforesaid, and at the time aforesaid, was standing and parked upon the concrete

pavement and within five inches of the center line of said pavement without any signal lamps or other lights of any kind or character attached thereto or projecting therefrom and without any barricades put up and constructed about said pavement finisher for warning, signal or protection to the traveling public using said highway at the time.''

It is further alleged that during the period between sunset and sunrise while plaintiff was operating his automobile upon the highway at the place mentioned, his automobile came into violent collision with defendant's roadway pavement finisher, thereby ca the damage complained of. The petition alleges that the negligence and carelessness of defendant ''in so leaving, and permitting said pavement finisher to be left standing on said pavement without lights or signal lamps or other warnings as to its position and presence, directly and proximately caused plaintiff's automobile to come into violent collision with the pavement finisher so standing, as aforesaid, thereby injuring and damaging plaintiff's automobile to the extent and in the manner following.''

The damage to plaintiff's automobile, his clothing, etc., are then set forth in the petition.

Defendant's amended answer admits that defendant is a corporation and denies each and every other allegation of plaintiff's petition. It then specifically denies that defendant left its pavement finisher parked on the pavement within five inches of the center thereof, as alleged by plaintiff, and avers that on June 18, 1930, defendant left its pavement finisher ''standing crosswise on said pavement with barriers erected on both sides thereof to prevent traffic from passing over said pavement which was not properly cured and which was not ready for traffic, and said defendant specifically denies that it failed and neglected to attach lights to said pavement finisher as alleged in plaintiff's petition, but states that from one-half hour after sunset to one-half hour before sunrise they kept and maintained lights on said pavement finisher at all times, and defendant further says that if said finisher was moved and placed in such a position as to be within five inches of the center of said pavement, same was moved by some person or persons other than the agents, servants, and employees of the defendant, and without its knowledge or consent.''

The court's refusal to give peremptory instructions in the nature of demurrers to the evidence, requested by defendant at the close of plaintiff's case and at the close of all the evidence are assigned as error. Defendant (appellant here) also assigns as error the court's action in giving to the jury plaintiff's instructions numbered 1 and 2, and in refusing to give defendant's instruction numbered D-6.

Plaintiff's evidence, including testimony by himself, was to the effect that plaintiff's automobile collided with the pavement finisher

shortly after midnight on June 20, 1930; that at the time of the collision there were no lights of any kind on the pavement finisher; that there were no barricades or signaling or warning devices of any kind to show its presence and position upon the highway; that it was parked in a position just outside the city limits of Farmington, Missouri, parallel with and partly on the concrete slab of the highway; that it projected over and upon the concrete slab of the highway such a distance as to require traffic on that side of the highway to go beyond the middle line thereof in order to pass; that the concrete slab was twenty feet wide; that machines coming in opposite directions meeting at that point could not pass each other on the concrete slab because of the presence of defendant's pavement finishing machine thereon.

Witnesses for defendant testified that the pavement finisher was parked up against the curb upon a paved street thirty feet wide just inside the limits of the City of Farmington. It was described as about twenty-two feet long, about eight to ten feet wide, and weight about eighteen hundred pounds. There was testimony for defendant showing that there were lighted torches called "nigger-heads" upon the paving maching on the night in question.

Defendant's testimony further showed that employees of the State Highway Department moved the pavement finisher from a position crosswise on the highway where defendant had left it on June 18, 1930, to the position it was in when the collision occurred on June 20, 1930, in the early morning. There was testimony to the effect that it was so moved without defendant's knowledge or consent.

It is evident from plaintiff's petition and from plaintiff's instructions No. 1 and No. 2, to which we shall refer later, that the case was tried on the theory of defendant's negligence under the statute, Section 7778, Revised Statutes 1929 (7 Mo. St. Anno., sec. 7778, p. 5522). While we are of the opinion that the evidence fails to show a case of negligence under the statute, for reasons hereinafter stated, plaintiff, nevertheless, made a case for the jury to decide. Aside from such portions of the petition as are obviously based upon the statute, there is sufficient to charge negligence under the common law with respect to the failure of defendant to have lights of any kind on its pavement finisher, and failure to give any other kind of warning to the public as to its presence and position on the highway. We therefore hold that under the evidence adduced, the court did not commit error in overruling defendant's demurrers to the evidence.

Defendant's counsel contends that plaintiff's instruction No. 1 is erroneous. The instruction is as follows:

"The court instructs the jury that if you believe and find from the evidence in this case that on the 20th day of June, 1930, the defendant, Service Construction Company, its agents, servants, and

employees, permitted a roadway pavement finishing machine to be left and allowed to stand on a public highway at or near the city limits of Farmington, Missouri, and that said roadway pavement finisher was left standing on said highway in a position such as to obstruct the traveled portion thereof during the period between one-half hour after sunset and one-half hour before sunrise without having attached thereto red lights plainly visible for a distance of at least 500 feet away, and if you further believe and find that during said period of time on the date aforesaid, the plaintiff's automobile was being operated on said highway by plaintiff and that in the operation of his said automobile plaintiff was at the time exercising the highest degree of care for his own safety and for the safety of persons and property upon said highway, and if you believe and find that plaintiff's automobile came into violent collision with defendant's roadway pavement finisher, standing on the traveled portion of the highway, if you so find, whereby plaintiff's automobile, his suit of clothes, his hat and eyeglasses, were damaged as a result of said collision, you should find the issues for the plaintiff and assess his damages in a sum equal to plaintiff's loss caused by said damages, not to exceed the sum of $660.''

It is urged by defendant's counsel that the statute requiring red lights one-half hour after sunset until one-half hour before sunrise visible for a distance of five hundred feet applies only to motor vehicles; that defendant's pavement finisher was not a motor vehicle and, therefore, Instruction No. 1 did not properly declare the law. The applicable part of the statute, Section 7778, Revised Statutes of Missouri 1929 (7 Mo. St. Anno., sec. 7778, p. 5522), is as follows:

''For the purpose of revealing its position and direction, a motor vehicle, while on the highway, whether in operation or at rest, during the period from one-half hour after sunset to one-half hour before sunrise, and at all times when fog or other atmospheric conditions render the operation of motor vehicles dangerous on the highway, shall carry lighted signal lamps as herein required; such lamps shall be so constructed, mounted and adjusted as to project the required kind of light so that it shall be plainly visible under normal atmospheric conditions from a distance of at least five hundred feet in the direction projected.''

It is clear that this statute does not apply to any and all vehicles, but applies only to a ''motor vehicle.'' The Legislature has given a clear definition of ''motor vehicle'' in Section 7759, Revised Statutes of Missouri 1929 (7 Mo. St. Anno., sec. 7759, p. 5179). It is as follows:

''Any self propelled vehicle not operated exclusively upon tracks, except farm tractors.''

We have searched the record to ascertain whether or not there is any evidence from which an inference might reasonably be drawn

that the pavement finisher of defendant was a self propelled vehicle, or, in other words, a "motor vehicle." We have been unable to find any such evidence. Such testimony as there is in the record on this point shows that the pavement finisher was not a self propelled vehicle. For example, plaintiff's witness, H. B. Watts, testified: "This machine had a tongue to be pulled by, and that tongue, to the best of my knowledge, was within six or eight inches of the center of the pavement."

W. H. Barton, a witness for defendant, testified: "We pulled it around on the north side of the city street. The first thing we did was to take off the steel forms that were lying on the slab, then hitched a truck to the finishing machine and moved it on to the north side of the street parallel with and against the curb."

In our opinion the giving of the instruction complained of was reversible error. The instruction was based on the theory that the pavement finisher was a motor vehicle and that the statute requiring lights of a particular kind applied to it. There is no evidence whatsoever in the case to support the theory that the pavement finisher was a motor vehicle, hence there was no evidence to warrant the giving of such an instruction. [Gundelach v. Compagnie Generale Transatlantique (Mo. Sup.), 41 S. W. (2d) 1; Althage v. Peoples Motor Bus Co., 320 Mo. 598, 8 S. W. (2d) 924; State ex rel. Goessling v. Daues, 314 Mo. 282, 284 S. W. 463.]

The error in giving Instruction No. 1 was emphasized by plaintiff's Instruction No. 2, which told the jury that it was the duty of defendant to place on its pavement finishing machine when standing or parked on a public highway during the time between one-half hour after sunset and one-half hour before sunrise, *red lights of sufficient strength to be visible at least five hundred feet away*. This instruction also was based upon the theory that plaintiff had made a case for the jury under the statute which requires such lights, whereas, there was no evidence to show that the pavement finishing machine was a motor vehicle to bring it within such statue. [Gundelach v. Compagnie Generale Transatlantique and other cases supra.]

In view of defendant's testimony to the effect that there were lights burning on the pavement finishing machine on the night in question, described as "nigger-head torches," the giving of the two instructions referred to was prejudicial error. Under the evidence and these instructions the jury may have believed that defendant did have lights burning on its pavement finisher but that they were not the kind of lights required by law.

Other grounds of complaint are urged with respect to instructions given and refused but these will, no doubt, be obviated in another trial.

Because of error in giving Instruction No. 1 and Instruction No. 2, the judgment is reversed and the cause remanded. *Becker, P. J.,* and *Kane, J.,* concur.